### George C. Wright, Respondent, v. George W. Broome, Appellant.

#### St. Louis Court of Appeals, May 19, 1896.

1. **Contracts**: QUANTUM MERUIT. The plaintiff undertook to feed and train race horses of the defendant under an agreement that he should receive an interest in the horses as compensation, and that the agreement should not become operative until reduced to writing. Despite the latter stipulation, he at once entered upon the discharge of his duties. No contract in writing was executed, and the horses were taken from him by the defendant. *Held*, that the plaintiff was entitled to recover for his services on a *quantum meruit*, if the failure to reduce the contract to writing was due to the fault of the defendant, but not if it was due to his own fault.

2. **Replevin**: RES ADJUDICATA. A judgment for the plaintiff in an action of replevin will not debar the defendant from asserting against the plaintiff personally a claim for compensation for the care of the property replevied, which was not set up in the replevin suit.

3. ———: RECOVERY OF ATTORNEYS' FEES BY SUCCESSFUL PLAINTIFF. A successful plaintiff in an action of replevin is not entitled to recover his attorneys' fees from the defendant.

*Appeal from the St. Louis City Circuit Court.*—Hon. James E. Withrow, Judge.

Reversed and remanded.

*Henry G. Herbel* for appellant.

*Edmond A. B. Garesche* and *William L. Murfree* for respondent.

(1) Where services are rendered and expenses incurred under a misunderstanding between the parties

as to the terms of compensation therefor, as to which the minds of the parties have never met, the party rendering the services and incurring the expense is entitled to recover a *quantum meruit* therefor under an implied contract, or "*quasi* contract," for proper compensation. *Turner v. Webster*, 24 Kan. 38; *Tucker v. Preston*, 60 Vt. 473; *Constable v. Lefever*, 21 N. Y. Supp. 38; *Cadman v. Markle*, 76 Mich. 448; *Wonsettler v. Lee*, 40 Kan. 367; *Lapham v. Osborne*, 18 Pac. Rep. 881.   (2) A judgment in replevin, like a judgment in any other form of action, is conclusive only of those secondary matters which are necessarily involved in the litigation of the main question.   Coffey on Replevin, sec. 1178; *Armel v. Layton*, 33 Kan. 41; Coffey on Replevin, secs. 1166, 1168; *Wanberg v. Karst*, 4 Mo. App. 563.   (3) Expenses of litigation are not properly an element of damage.   1 Sedgwick on Damages, sec. 229, *et seq.*

BIGGS, J.—On the sixth day of April, 1883, the defendant Broome instituted a replevin suit against the plaintiff to recover the possession of two race horses, viz.: a black filly named "Black Gal," and a sorrel filly known as the "Bass filly."   The defense was that Wright owned an undivided half interest in the horses. The case was tried at the October term of the circuit court of the city of St. Louis, and resulted in a verdict and judgment for Broome.   In the present case the entire record in the replevin suit, which included the testimony taken at the trial and the instructions, was read in evidence, from which it appears that in November, 1882, Broome, who was the owner of the horses, delivered them to Wright with the understanding that Wright should care for, train and race them, and to compensate him for this trouble and expense he was to have an undivided half interest in the horses

and was to receive one half of their winnings. In pursuance of this understanding Wright took the horses to his farm in Jefferson county, where he kept them until February 22, 1883, when he brought them to St. Louis and put them in the hands of a trainer. The theory upon which Broome tried the replevin suit (as indicated by his testimony and instructions) was that it was understood between him and Wright that their contract in reference to the horses should not go into effect until it was reduced to writing, which had never been done. On the other hand, Wright contended that the contract was fully agreed to, and that the reduction of it to writing was intended only as evidence of what the agreement was.

After the final determination of the replevin suit, to wit, on the sixteenth day of May, 1885, the present suit was instituted, in which the plaintiff sues for feeding and caring for the horses while they were on the farm, and also for expenses incurred by him in training them prior to their seizure under the writ of replevin. The total amount claimed is $381.25. The defendant denied all liability, and insisted further that, if plaintiff was entitled to any compensation for feeding and training the horses, he should have asserted the claim in the replevin suit, and, having failed to do so, he is precluded from suing for it in this action. The defendant also set up in his answer a counterclaim for $150, attorneys' fees paid by him for the prosecution of the replevin suit. The cause was submitted to the court without a jury. The facts concerning the replevin suit were established, and evidence was received on both sides as to the reasonable charges for feeding and caring for the horses while at the farm, and the plaintiff also gave evidence of the money paid by him in training the horses after they were brought to the city, which was controverted by the defendant's evidence.

The defendant also introduced evidence in support of his counterclaim. The plaintiff asked no instructions, and those asked by the defendant were refused. The court found in favor of the plaintiff in the sum of $144.66 for keeping the horses at the farm, with interest thereon from the date of the institution of the suit, and against him on the balance of the account. The finding was against the defendant on his counterclaim. Judgment was rendered for plaintiff for the amount of the finding with interest. The defendant has appealed, and complains of the action of the court in refusing his instructions.

The defendant insists that his instruction for nonsuit ought to have been given for the reason that, if the contract was not signed through the fault of the plaintiff, he can not recover, and likewise he could not recover if the fault was with the defendant, for the plaintiff's action then would be for damages for a breach of the contract. As to the first proposition the defendant is undoubtedly correct. It is undisputed here, as it was in the replevin suit, that it was agreed that the plaintiff should take the horses, feed, care for and train them, and in lieu of a money compensation therefor he was to receive an interest in the horses. The judgment in the action of replevin conclusively established the further fact that this agreement was not to become operative until it was reduced to writing and signed by the parties, which it is conceded was not done. Therefore it is plain that the plaintiff can not recover, if he refused to sign the contract; for he expressly agreed that he would charge nothing for keeping and training the horses as an individual item, but was to receive his compensation under a contract thereafter to be executed. If he voluntarily and without cause refused to enter into such contract, he will

not be allowed to recover for his services upon a *quantum meruit*. *Davidson v. Biermann*, 27 Mo. App. 655; *Suits v. Taylor*, 20 Mo. App. 166.

Concerning the second proposition we think that counsel is in error. The replevin suit conclusively established that there was no contract; hence the plaintiff could not sue for its breach. But, if the arrangement under which the plaintiff took the horses failed of consummation through the wrongful act of the defendant and through no fault of the plaintiff, then in equity and good conscience the latter ought to receive his reasonable charges and expenses. It was certainly unwise for the plaintiff to take charge of the horses and incur any expense on account of them before the contract was reduced to writing; but, nevertheless, if the defendant refused without just cause to finally consummate the agreement and the plaintiff was ready and willing to do so according to the oral understanding, he ought to recover to the extent that defendant was benefited by his services, for otherwise the defendant would be permitted to profit by his own bad faith. We think that this view is supported by analogous cases. Thus the law holds a defendant liable as upon an implied contract to pay proper compensation, where the plaintiff has rendered his services upon request but there is a misunderstanding as to the compensation to be paid. *Turner v. Webster*, 24 Kansas, 38; *Tucker v. Preston*, 60 Vt. 473; *Constable v. Lefever*, 21 N. Y. Supp. 38. So, where the contract under which the services are rendered is void under the statute of frauds and no action can be maintained thereon, yet a recovery upon a *quantum meruit* may be had. *Cadman v. Markle*, 76 Mich. 448; *Wonsettler v. Lee*, 40 Kansas, 367; *Lapham v. Osborne*, 18 Pac. Rep. 881.

In further support of the instruction of nonsuit it is insisted by the defendant that the judgment in the

replevin suit is a complete bar to this action, in that the claim for the keep of the horses was necessarily involved in the replevin suit. In this we think that the defendant is in the wrong. A judgment in replevin is conclusive as to all issues involved, which are to be determined largely by the pleadings. Cobbey, in his work on the law of replevin, says that, "if the title is involved, the adjudication is final as to title, and if the money judgment for value is paid and discharged, it amounts to a transfer of the title to the defeated party. If the title is not involved, the adjudication is conclusive as to the right of possession at the commencement of the action between the parties to the action and their privies under the circumstances existing at the time. It is conclusive and final on the subject of damages or other secondary matters *necessarily involved* in the litigation of the main question—the right of possession." The claim for the keep of the horses which the plaintiff now presents was not necessarily involved in the replevin suit. He may have been entitled under the circumstances above stated to an agister's lien on the horses, and by failing to insist on its enforcement in the replevin suit he waived it; but he did not thereby waive his right to compensation. We can not conceive how he could have availed himself of the claim in the replevin suit, as he denied the unlawful detention and asserted ownership of the horses under the alleged contract. We, therefore, conclude that the circuit court was justified in declining to nonsuit the plaintiff.

The defendant asked the following instruction, to wit: 1. "The court declares the law to be that, if the plaintiff took the horses, for the care of which he sues, with the understanding that an agreement was thereafter to be made in writing respecting them, whereby in lieu of receiving compensation for keeping them he was to have an interest in them, and that after having

obtained possession of them the plaintiff refused to enter into said contract, then he is not entitled to recover in this case." As there was ample evidence tending to prove that the plaintiff did refuse without just cause to sign the written contract, and as the other facts (which are stated hypothetically in the instruction) were affirmatively and conclusively determined by the judgment in the action of replevin, the circuit court committed error in refusing the instruction. The defendant's second instruction asserted substantially the same principle, and should also have been given. His third instruction was properly refused, as it declared that, if the defendant refused to sign the contract, then the plaintiff's remedy was for breach of the contract. Our discussion of the instruction of nonsuit covers all of these questions.

The remaining question pertains to the defendant's alleged counterclaim. We have found no law supporting it. Some of the authorities hold that, where the taking is willful or malicious, attorney's fees may be included in the assessment of plaintiff's damage in a replevin suit. But the general rule is that such fees are not proper items of damage under any circumstances, and this view has been concurred in by our supreme court. *Mix v. Kepner,* 81 Mo. 93; Wells on Replevin, sections 576, 577; Cobbey on Replevin, sections 920, 921. Therefore, we think that the circuit court did right in refusing the defendant's instruction as to the counterclaim, and in rejecting it altogether.

For error in refusing the defendant's first and second instructions, the judgment of the circuit court will be reversed and the cause remanded. All the judges concur.